UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

IN RE:                                                                    CASE NO. 13-61501
                                                                          Chapter 7

MANALAPAN MINING COMPANY, INC.
DEBTOR

**MOTION OF CHAPTER 7 TRUSTEE FOR AN ORDER
APPROVING THE SALE OF CERTAIN ASSETS OF THE DEBTOR'S
ESTATE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND RELATED RELIEF**

James R. Westenhoefer, Chapter 7 trustee ("Trustee") for the bankruptcy estate (the "Estate") of the above captioned debtor ("Debtor"), requests the entry of an order approving the sale of certain assets of the Debtor's Estate to Oak Point Partners, Inc. ("Oak Point") free and clear of liens, claims, interests, and encumbrances pursuant to 11 U.S.C. §§ 105 and 363, and related relief ("Motion"). In support of the Motion, the Trustee respectfully states as follows:

### Jurisdiction

1.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief sought herein are sections 105(a) and 363 of Title 11 of Chapter 11 of the United States Code (the "Bankruptcy Code"), as well as Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

3.    On or about November 22, 2013, (i) the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code; and (ii) the Trustee was appointed as the Chapter 7 trustee for the Debtor's Estate.

4.  Since being appointed, the Trustee has administered the Debtor's Estate for the benefit of its creditors in accordance with its power and duties. The Trustee is now in the process of winding down the administration of this case. To that end, the Trustee is engaged in efforts to ensure that the maximum value of the Estate's remaining assets is realized, which efforts include pursuing the sale of any remaining assets.

5.  The Trustee has determined that there may exist property of the Debtor's Estate, consisting of known or unknown claims, property rights, or assets, which have not been previously sold, assigned, or transferred (collectively, the "Remnant Assets"). The Trustee has determined that the cost of pursuing the Remnant Assets will likely exceed the benefit that the Estate would possibly receive on account of the Remnant Assets.

6.  The Trustee and Oak Point have negotiated an agreement (the "Purchase Agreement") for the sale of the Remnant Assets, substantially in the form attached as <u>Exhibit A</u> to the form of order filed with this Motion.

### **Requested Relief**

7.  By this Motion, the Trustee seeks the entry of an order pursuant to 11 U.S.C. §§ 105 and 363(b), (f), and (m), as well as Bankruptcy Rule 6004, (a) authorizing the Trustee to sell the Remnant Assets free and clear of all liens, claims, interests, and encumbrances; and (b) approving the terms of the Purchase Agreement.

8.  The Purchase Agreement generally provides for an aggregate purchase price of $6,000.00 (the "Purchase Price") to be paid by Oak Point to the Trustee for the benefit of the Debtor's Estate.

9.  In accordance with the Purchase Agreement, the Remnant Assets do not include (i) cash held by the Trustee for distribution to creditors and professionals; and (ii) the Purchase

2

Price for the Remnant Assets.

10. In the Trustee's business judgment, the Purchase Price represents a fair and reasonable sales price for the Remnant Assets, and represents the highest and best offer for the sale of the Remnant Assets. Additionally, the benefit of receiving immediate payment for the Remnant Assets, which are largely unknown, outweighs the potential benefits of retaining the Remnant Assets. Finally, the Trustee believes that the cost of pursuing the Remnant Assets will likely exceed the benefit that the Estate would possibly receive.

### Bidding Procedures

11. The Notice and Opportunity to Object section of this Motion (the "Notice") establishes a deadline by which objections or responses to this Motion must be filed with the Court (the "Response Deadline").

12. While the Trustee is prepared to consummate the sale of the Remnant Assets to Oak Point pursuant to the terms set forth herein and in the Purchase Agreement, in the event a party other than Oak Point (each, an "Interested Bidder") wishes to purchase the Remnant Assets, the Trustee requests that the Court approve the following overbid procedures (collectively, the "Bidding Procedures"):

   a. Each Interested Bidder who wants to participate in the overbid process must notify the Trustee of its intention to do so in accordance with the Notice on or before the Response Deadline;

   b. each initial overbid for the Remnant Assets must be at least $10,000.00;

   c. each Interested Bidder must submit a cashier's check to the Trustee in the amount of such Interested Bidder's initial overbid; and

   d. in the event a party other than Oak Point is deemed the winning bidder with respect to the Remnant Assets, such other party shall be required to purchase the Remnant Assets under the same terms and conditions as set forth in the Purchase Agreement.

13. The Trustee believes that the private sale of the Remnant Assets in accordance with the terms of the Purchase Agreement, and as provided herein, serves the best interests of the Debtor's Estate and creditors, as the sale will allow the Trustee to realize additional funds for the benefit of the Estate. Accordingly, the sale to Oak Point should be approved as requested.

## Authority for Requested Relief

14. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Moreover, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

15. To approve use, sale or lease of property outside the ordinary course of business, the Court must find that such sale is supported by the sound business judgment of the debtor or trustee, as the case may be. *See In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbotts Dairies of Pa. Inc.*, 788 F. 2d 143 (3d Cir. 1986 ) (requiring good faith purchasing); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D.Del. 1991) (holding that transactions should be approved under Section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); and *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D.Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good

business reason for completing the sale and the transaction is in good faith.")..

16.     A trustee's showing of sound business judgment, in turn, need not be unduly exhaustive; instead the trustee is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071. Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp.*, 973 F.2d 141, 144 (2d Cir. 1992).

17.     The Trustee submits that the sale of the Remnant Assets pursuant to the Purchase Agreement represents a prudent and proper exercise of business judgment, and is in the best interest of creditors of the Debtor's Estate. Specifically, the Purchase Agreement was negotiated at arm's length and in good faith, and the Trustee believes that the Purchase Price is reasonable and represents fair value. Moreover, a private sale is appropriate because any costs associated with an auction of the Remnant Assets would likely exceed the Purchase Price and, in turn, any benefit to the Estate.

18.     Moreover, based on the foregoing, Oak Point should be deemed a good faith purchaser. Although the Bankruptcy Code does not define "good faith purchaser," the United States Court of Appeals for the Third Circuit construing section 363(m), has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'." *In re Abbott's Dairies of Pa., Inc.*, 788 F.2d at 147; *See also In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); and *In re Vanguard Oil & Serv. Co.*, 88 B.R. 576, 580 (E.D.N.Y. 1988).

19.     Additionally, section 363(f) of the Bankruptcy Code permits a trustee to sell

5

assets free and clear of all interests which may be asserted against such assets, with any such interests attaching to the net proceeds of the sale, if subject to the rights and defenses of a debtor with respect thereto:

    a. Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    b. Such entity consents;

    c. Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    d. Such interest is in bona fide dispute; or

    e. Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). As Section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to Section 363(b), it is only necessary to meet one of the five conditions of Section 363(f). To the extent that there are interests that may be asserted in the Remnant Assets, the Trustee believes that one or more of the aforementioned conditions have been satisfied.

    20. Finally, the Trustee's proposed Bidding Procedures are appropriate and should be approved by the Court. Courts have routinely held that when the sale of assets in bankruptcy is done on a competitive bidding basis, as is proposed herein, it is appropriate to require parties submitting competing bids to submit bids that exceed the existing bid by a specified amount. See, e.g., *In re Financial News Network Inc.*, 931 F.2d 217 (2d Cir. 1991). Oak Point has expended, and will continue to expend, considerable time, money, and energy pursuing the purchase of the Remnant Assets as proposed herein, and has engaged in good faith, arm's length negotiations with the Trustee.

    21. As set forth herein, the Trustee submits that the sale of the Remnant Assets is a prudent exercise of its business judgment under the circumstances, and is in the best interest

of the Debtor's Estate and creditors. Indeed, the Trustee is not aware of any future assets or claims that may be liquidated, obtained or otherwise administered, and absent the sale to Oak Point, the Debtor's Estate would not realize any benefits on account of the Remnant Assets. Finally, the Purchase Price for the sale is reasonable and has been negotiated at arm's length. Therefore, the Trustee respectfully requests that the Court grant the Motion.

### Waiver of Stay of Order

22.  Pursuant to Bankruptcy Rule 6004(h), an order authorizing the sale of property is stayed for fourteen (14) days after the entry of the order unless the Court orders otherwise. The Trustee requests that the Court order that such stay not apply with respect to the sale of the Remnant Assets.

### Notice

23.  Notice of this Motion has been given to the Debtor, the Office of the United States Trustee, Oak Point, and all parties requesting notice pursuant to Bankruptcy Rule 2002. The Trustee submits, and requests that this Court determine, that such notice is proper and adequate; no further notice is required; and that other and further notice be waived.

WHEREFORE, the Trustee respectfully requests entry of an order authorizing the sale of the Remnant Assets pursuant to the terms of the Purchase Agreement, waiving the fourteen-day stay under Bankruptcy Rule 6004(h), and granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

By /s/ James R. Westenhoefer
JAMES R. WESTENHOEFER, TRUSTEE
212 South Third Street
Richmond, KY 40475
(859) 624-0145

## NOTICE AND OPPORTUNITY TO OBJECT

All parties shall take notice that unless the Court receives an objection to this Motion of Chapter 7 Trustee for an Order Approving the Sale of Certain Assets of the Debtor's Estate Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to 11 U.S.C. §§ 105 and 363 and Related Relief within twenty-one (21) days of the date of this notice, the Court will enter an order approving this sale without further notice to creditors and parties in interest. Any objection shall be filed with the U.S. Bankruptcy Court Clerk, and served upon (i) the Trustee; and (ii) Oak Point Partners, Inc., Attn: Janice Alwin, Esq., 5215 Old Orchard Rd., Suite 965, Skokie, IL 60077, janice@oakpointpartners.com, and noticed by the objecting party to be heard before the U.S. Bankruptcy Court, London, Kentucky.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion of Chapter 7 Trustee for an Order Approving the Sale of Certain Assets of the Debtor's Estate Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to 11 U.S.C. §§ 105 and 363 and Related Relief was served by electronic notice and/or by placing same in the U.S. Mail, postage prepaid, addressed to the Debtor, Debtor's attorney, U.S. Trustee's Office and all creditors and other parties in interest as listed upon the mailing matrix, on this, the 6th day of February, 2018.

/s/ James R Westenhoefer
JAMES R. WESTENHOEFER, TRUSTEE



# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of February __, 2018, is by and between **JAMES R. WESTENHOEFER, not individually, but solely as chapter 7 trustee** ("Trustee" or "Seller") **of the MANALAPAN MINING COMPANY, INC.** ("Debtor") **BANKRUPTCY ESTATE** ("Estate") and **OAK POINT PARTNERS, INC.** ("Purchaser").

## WITNESSETH:

WHEREAS, on November 22, 2013, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Kentucky ("Court"), assigned Case No. 13-61501; and

WHEREAS, on or about November 23, 2013, the Trustee was appointed as chapter 7 trustee of the Debtor's Estate; and

WHEREAS, at the time of the execution of this Agreement and continuing into the future, there may be property of the Estate remaining, consisting of known or unknown assets or claims which have not been previously sold, assigned, or transferred (collectively, "Remnant Assets"); and

WHEREAS, Remnant Assets specifically **exclude**: (a) cash held at the time of this Agreement by the Debtor or Trustee in bank accounts earmarked for distribution to creditors and/or payment of professional fees; and (b) the Purchase Price (as hereinafter defined) to be delivered pursuant hereto; and

WHEREAS, subject to Court approval, Seller has the power and authority to sell and assign all right, title and interest in and to the Remnant Assets to Purchaser, including, but not limited to the proceeds thereof.

NOW THEREFORE, in consideration of the promises and mutual undertakings herein contained, Seller and Purchaser agree as follows:

1. **Purchase Price.** The Purchase Price shall be good funds in the amount of Six Thousand and No/100 Dollars ($6,000.00) payable within 3 business days of receipt by Purchaser of this executed Agreement and the entry of a non-appealable Order of the Court approving this Agreement.

2. **Assignment of Remnant Assets.** Seller hereby irrevocably and unconditionally sells, assigns, transfers and conveys to Purchaser all of the Seller's right, title and interest under, in and to the Remnant Assets, as well as any and all claims and rights related to the Remnant Assets, including, without limitation, all cash, securities, instruments and other property that may be paid or issued in conjunction with the Remnant Assets and all amounts, interest, and costs due under the Remnant Assets.

3. **Authority to Sell.** Subject to Court approval, the sale of the Remnant Assets by the Seller is made pursuant to the authority vested in the Seller.

4. **Payments Received on Remnant Assets.** Seller further agrees that any payments received by Seller on account of any Remnant Assets shall constitute property of the Purchaser to which the Purchaser has an absolute right, and that Seller will promptly deliver such payment to Purchaser at Purchaser's address set forth below. Seller agrees to use reasonable efforts to forward to Purchaser notices received with respect to any Remnant Assets.

5. **Seller's Representations and Warranties.** In consideration of Purchaser's agreements herein and to

1

induce Purchaser to enter into this Agreement, Seller represents and warrants to Purchaser that Seller has full lawful right, title, power and authority to enter into this Agreement and to convey Seller's interest to Purchaser in the Remnant Assets as is set forth in this Agreement.

**EXCEPT AS SPECIFICALLY SET FORTH HEREIN, THE SELLER SELLS, ASSIGNS, AND TRANSFERS THE REMNANT ASSETS TO THE PURCHASER "AS IS, WHERE IS" WITHOUT ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, WHETHER EXPRESS, IMPLIED OR IMPOSED BY LAW.**

6. **Free and Clear Sale.** The sale of Remnant Assets shall be free and clear of any liens, claims, or encumbrances pursuant to 11 U.S.C. § 363(f).

7. **No Assumption of Liabilities.** Notwithstanding any other provision of this Agreement, the parties agree that Purchaser is acquiring only the Remnant Assets and rights and interests related thereto, and that Purchaser is not acquiring or assuming, nor shall it be deemed to have acquired or assumed, any liabilities or obligations of any Seller or its affiliates of any kind or nature, whatsoever, whether arising out of, or in connection with, the Remnant Assets, except as may otherwise expressly be provided herein.

8. **Documents of Assignment.** From time to time upon request from Purchaser, Seller shall execute and deliver to Purchaser such documents reasonably requested by Purchaser to evidence and effectuate the transfer contemplated by this Agreement in a form reasonably acceptable to the parties hereto. However, Purchaser shall reimburse Seller for its reasonable costs associated with such compliance.

9. **Limited Power of Attorney.** Solely with respect to the Remnant Assets, and to the extent permitted by law, Seller hereby irrevocably appoints Purchaser as its true and lawful attorney and authorizes Purchaser to act in Seller's stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Remnant Assets herein assigned. Seller grants unto Purchaser full authority to do all things necessary to enforce the Remnant Assets and its rights thereunder pursuant to this Agreement.

10. **Entire Agreement.** This Agreement embodies the entire agreement and understanding between Seller and the Purchaser and supersedes any and all prior agreements and understandings with respect to the subject matter hereof. This Agreement may not be amended or in any manner modified unless such amendment or modification is in writing and signed by both parties.

11. **Benefits and Binding Effect.** All provisions contained in this Agreement or any document referred to herein or relating hereto shall inure to the benefit of and shall be binding upon the respective successors and assigns of Seller and the Purchaser.

12. **Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of Kentucky, without giving effect to choice of law principles of the State of Kentucky.

13. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument, and copies or facsimiles of execution signatures shall be equivalent to original signatures.

[remainder intentionally left blank; signature page follows]

2

Case 13-61501-grs   Doc 315   Filed 02/06/18   Entered 02/06/18 16:30:34   Desc Main
                    Document      Page 11 of 12

**THIS AGREEMENT** has been duly executed as of the day and year first above written.


**OAK POINT PARTNERS, INC.**

By: _____
Name: ERIC LINN
Its: President

Address *(for regular mail and mail forwarding)*: PO Box 1033, Northbrook, IL 60065-1033
Address *(for overnight delivery)*: 5215 Old Orchard Road, Suite 965, Skokie, IL 60077
tel (847) 577-1269     fax (847) 655-2746


**MANALAPAN MINING COMPANY, INC. BANKRUPTCY ESTATE**

By: _____
Name: JAMES R. WESTENHOEFER
Its: Chapter 7 Trustee

Address: 212 S. 3rd St., Richmond, KY 40475
tel (859) 624-0145

3



**From:** Andrew Kaplan <andrew@oakpointpartners.com>
**To:** 'jrwestenhoefer@aol.com' <jrwestenhoefer@aol.com>
**Subject:** Manalapan Mining - Cash for Remnants
**Date:** Wed, Jan 17, 2018 3:33 pm

Jim – it was nice speaking with you yesterday. I'm getting back to you with our cash offer to purchase the remnants in Manalapan.

Based on the age of the case and our experience in other similar bankruptcy situations, we would typically pay $4K-$5K for the rights to the remnants. However, since this is a Chapter 7 Case and there will be additional costs (Noticing, etc), I was able to convince my partners to stretch a bit more and pay $6K so long as we get something filed with the court by the end of the month. Does that timing work for you?

Importantly, it's a real straightforward process - our diligence is complete, and we don't require you to dig up any old files or anything like that. We use a real basic 2-page agreement, and to help minimize resources on your end, we can provide a draft Motion and Order conformed to the case. If you'd like to move forward, I can quickly send along the documents for your review.

If there's anything we should discuss, please give me a call on either number below.

Thanks! – Andrew

_____
ANDREW KAPLAN | Oak Point Partners
T 224.836.5229 | F 847.577.1150 | M 224.558.5784
andrew@oakpointpartners.com | OakPointPartners.com

**Brief Overview of Oak Point Partners:** A "Remnant Asset" can be any known or unknown asset that turns up after the Ch 7 Trustee's Final Report. In the past, Trustees sometimes had to go through a time consuming process to resolve unknown assets that showed up months or years after the final report. Therefore, Oak Point developed the Remnant Asset purchase, where we pay cash shortly before the TFR for any assets that might turn up in the future. Our Remnant Asset purchase is often misunderstood because professionals assume that there must be known assets remaining in order for us to make a purchase offer. In reality, most of our Remnant Asset deals occur when there are no known remaining assets of value. We pay cash in the hope that an unknown asset, such as an old utility deposit refund, shows up down the road. Since pioneering the Remnant Asset purchase 10 years ago, Oak Point has completed Remnant Asset purchases toward the end of more than 400 cases of all shapes and sizes around the country, including Brobeck, Phleger & Harrison, Factory 2-U, Furr's Supermarkets, MarchFirst, and Winstar Communications.